AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

## FILED

for the

Eastern District of California

APR 26 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
_____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br>Samsung Galaxy S8 Cellular Phone, IMEI<br>359031082767817, Samsung Galaxy S8 Cellular<br>Phone, IMEI 358481090066341, Samsung Galaxy<br>S9 Cellular Phone, IMEI 354650091538250, and<br>Swann 8 Channel DVR, SN 1171004108022,<br>CURRENTLY LOCATED AT USPIS Domicile,<br>2000 Royal Oaks Drive, Sacramento, California | )<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>2:19 - SW - 366 — CKD |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1708 | Theft or Receipt of Stolen Mail |
| 18 U.S.C. § 1709 | Theft of US Mail by a Postal Service Employee |
| 21 U.S.C. § 841(a)(1) | Distribution and Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dustin Warner, USPS OIG Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/26/2019__

_____
*Judge's signature*

City and state:  Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge

McGREGOR W. SCOTT
United States Attorney
MIRA CHERNICK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| Samsung Galaxy S8 Cellular Phone, IMEI 359031082767817, Samsung Galaxy S8 Cellular Phone, IMEI 358481090066341, Samsung Galaxy S9 Cellular Phone, IMEI 354650091538250, and Swann 8 Channel DVR, SN 1171004108022, CURRENTLY LOCATED AT USPIS Domicile, 2000 Royal Oaks Drive, Sacramento, California | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICES |

1.      I, Dustin Warner, being first duly sworn, hereby depose and state as follows:

## I.      **INTRODUCTION AND AGENT BACKGROUND**

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

3.      I am a Special Agent (SA) with the United States Postal Service (USPS) Office of Inspector General (OIG) in West Sacramento, California, and have been so employed since August 2017. Prior to my employment with the OIG, I was employed for approximately five years as a Postal Inspector with the United States Postal Inspection Service (USPIS). My responsibilities include investigations of USPS employees for criminal violations of federal and state law, including mail theft

1  and the unlawful transportation of contraband, including controlled substances and the sale of controlled

2  substances, through the United States Mail.  I am a "Federal law enforcement officer" within the

3  meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law

4  enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

5        4.      I attended the United States Postal Inspection Service Basic Inspector Training in

6  Potomac, Maryland and I have received a certificate in Computer Investigations from Solano

7  Community College in Fairfield, California. Through my training, experience, and interaction with other

8  experienced Special Agents, Postal Inspectors, Task Force Officers, and other drug investigators, I have

9  become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport,

10  and distribute drugs; to collect and conceal drug-related proceeds; and to communicate with other

11  participants to accomplish such objectives.  I have received specialized training in narcotics

12  investigation matters including, but not limited to, drug interdiction, drug detection, money laundering

13  techniques and schemes, and drug identification.

14        5.      I have participated in at least thirty investigations targeting individuals and organizations

15  trafficking narcotics including heroin, cocaine, marijuana, methamphetamine, and other controlled

16  substances. During these investigations, I have become familiar with the way drug traffickers use the

17  mail to conduct their illegal operations. I have written at least twenty-five search warrants related to

18  parcel interdiction efforts.

19        6.      The facts in this Affidavit come from my personal observations, my training and

20  experience, and information obtained from other agents and witnesses. This affidavit is intended to show

21  only that there is sufficient probable cause for the requested warrant and does not set forth all of my

22  knowledge about this matter.

23        **II.      IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

24        7.      The property to be searched are:  Samsung Galaxy S8 Cellular Phone, IMEI

25  359031082767817, Samsung Galaxy S8 Cellular Phone, IMEI 358481090066341, Samsung Galaxy S9

26  Cellular Phone, IMEI 354650091538250, and Swann 8 Channel DVR, SN 1171004108022, hereinafter

27  the "Devices."  The Devices are currently located at the USPIS Domicile, 2000 Royal Oaks Drive,

28  Sacramento, California.

8.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B. The items set forth in Attachment B constitute evidence, fruits, proceeds, or instrumentalities of violations of 18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail); 18 U.S.C. § 1709 (Theft of US Mail by a Postal Service Employee); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute and Distribution of a Controlled Substance); 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance).

### III.     **PROBABLE CAUSE**

9.     Through my training and experience and discussions with other Postal Inspectors and drug-trafficking investigators, I am aware and submit that a large number of narcotics traffickers use the U.S. Mail to distribute narcotics throughout the United States and internationally.  The State of California is a source state for narcotic shipments, including marijuana. USPIS is tasked with investigating persons using the mail to ship such narcotic shipments.  Due to the large volume of marijuana shipments leaving the State of California and to further assist in reducing the number of narcotic parcels traveling through the mail stream, Postal Inspectors have instructedUSPS employees located within the Sacramento District to mail parcels that have obvious odors of marijuana emanating from them to the USPIS office located at the Royal Oaks Post Office, 2000 Royal Oaks Drive, Sacramento, California. When these parcels arrive at the Royal Oaks Post Office, USPS employees are instructed to place the parcels on a specific cart labeled for Postal Inspectors, located within a supply room of the post office, with eventual delivery to the Postal Inspectors.

10.     On September 11, 2018, a Postal Inspector was contacted by USPS management at the Royal Oaks Post Office, regarding a parcel that was found hidden in a corner of a large supply room. The supply room is the same room that contains the carts used to stage suspected narcotic parcels to be forwarded to the Postal Inspectors.  On September 13, 2018, law enforcement reviewed surveillance video from a hidden camera that was previously installed inside the supply room, for the sole purpose of monitoring the incoming narcotic parcels being delivered to the Postal Inspector narcotic cart.  During the review, law enforcement observed that on September 10, 2018 at approximately 1858 hours, Shabina S. DEBBIE, a lead sales and services associate at the Royal Oaks Post Office, removed a parcel from one of the carts used to stage suspected narcotic parcels being delivered to the USPIS, and placed it in

1  the location where it was found the following day.  As a lead sales and service associate, DEBBIE is

2  responsible for interacting with customers at the front counter and accepting packages for mailing.

3        11.    Shortly after reviewing the video, law enforcement began conducting checks of law

4  enforcement and employee databases and determined that DEBBIE resided at 1905 Michigan Blvd,

5  West Sacramento, CA 95691 (the "MICHIGAN BLVD RESIDENCE").  Additionally, law enforcement

6  determined that DEBBIE works at the Royal Oaks Post Office, and that on a typical day, she drives

7  herself to work in a maroon colored, Toyota Avalon sedan bearing California license plate 4RRA845

8  (SUBJECT VEHICLE 1).  Law enforcement conducted a check of the registration on SUBJECT

9  VEHICLE 1 and determined it was registered to DEBBIE at the MICHIGAN BLVD RESIDENCE

10  address.  Law enforcement confirmed SUBJECT VEHICLE 1 was parked in the driveway of the

11  MICHIGAN BLVD RESIDENCE on multiple occasions.

12        12.    On October 4, 2018, law enforcement conducted surveillance of DEBBIE at the Royal

13  Oaks Post Office.  Parked in the employee lot at the initiation of the surveillance was SUBJECT

14  VEHICLE 1.  At approximately 1855 hours, law enforcement observed a rolling hamper that contained

15  what appeared to be a large parcel.  The hamper was located near the retail area of the post office in the

16  large area between the retail side (west side) and the delivery side (east side) of the post office.  Law

17  enforcement observed DEBBIE putting unused flat, red and white USPS Priority Mail boxes on top of

18  the parcel that was inside the hamper.  DEBBIE also put a package of flat, unused USPS Priority Mail

19  Express boxes that were still wrapped in plastic, inside the hamper in a manner that fully concealed the

20  original parcel contained inside the hamper.  At approximately 1912 hours, law enforcement observed

21  DEBBIE enter SUBJECT VEHICLE 1, which was parked in the employee parking lot on the north side

22  of the post office near the exit.  Instead of exiting the post office lot at the usual exit, DEBBIE made a

23  U-turn in SUBJECT VEHICLE 1 and drove around the back side of the post office towards the main

24  entrance and an alternate exit gate.  At approximately 1945 hours, law enforcement observed that

25  DEBBIE had re-entered the building, and observed her pushing the hamper with the concealed parcel

26  towards the dock on the south side of the post office, which was in the general direction she was last

27  seen driving around the parking lot.

28        13.    A review of surveillance video for the Royal Oaks Post Office on October 26, 2018

1    showed that at approximately 1752 hours, DEBBIE removed two parcels from a hiding location in the

2    previously-referenced supply room and placed them in a metal cart, commonly referred to by USPS

3    employees as a "u-cart" due to its shape resembling the letter "U," near the Postal Inspector narcotic cart

4    used for staging suspected narcotic parcels. DEBBIE removed two additional parcels from the Postal

5    Inspector narcotic cart, placed them into the same "u-cart" and pushed it toward the middle of the post

6    office and staged it in between multiple other carts and behind a large pillar, in an apparent attempt to

7    hide it from other employees. DEBBIE put numerous empty Priority Mail boxes onto the cart in a

8    concealing manner that made the parcels inside the cart no longer visible. At approximately 2049 hours,

9    DEBBIE retrieved the "u-cart" with the stashed parcels, put additional unused, flattened Priority Mail

10   boxes on top of it and pushed it to the north side of the post office where she normally parks SUBJECT

11   VEHICLE 1.

12           14.     On October 30, 2018, law enforcement observed two rolling trash cans on the street out

13   in front of DEBBIE's MICHIGAN BLVD RESIDENCE. Law enforcement conducted a walk by of the

14   residence and were able to look into the recycle can in front of the residence. Law enforcement

15   observed inside the recycle can a bundle of unused, unopened red and white Priority Mail boxes, still

16   wrapped in plastic. The boxes were the same type of boxes previously used by DEBBIE to conceal

17   stolen parcels within the post office.

18           15.     On October 30, 2018, law enforcement conducted surveillance of DEBBIE at the Royal

19   Oaks Post Office. Parked in the lot at the initiation of the surveillance was SUBJECT VEHICLE 1. At

20   approximately 1856 hours, law enforcement observed DEBBIE inside the previously mentioned supply

21   room. Law enforcement observed DEBBIE remove a large parcel from a hamper near the Postal

22   Inspector narcotic cart and hide it elsewhere in the supply room. At approximately 1925 hours, law

23   enforcement observed DEBBIE depart the post office for the evening, along with another USPS

24   supervisor. At approximately 1951 hours, after she departed the parking lot driving SUBJECT

25   VEHICLE 1, law enforcement went to the area of the supply room where DEBBIE hid the parcel that

26   she removed from the Postal Inspector narcotic cart. Law enforcement observed two hidden parcels in

27   the area. Law enforcement identified one of the parcels as the one DEBBIE earlier removed from the

28   Postal Inspector narcotic cart and hid. The parcel contained an Express Mail label bearing tracking

1  number of EM079068293US, which was mailed earlier in the day at the Royal Oaks Post Office. The

2  parcel was paid for in cash, weighed over fourteen pounds, was destined for an address in New York,

3  and was consistent with parcels containing narcotics. The other was a Priority Mail parcel that had a

4  piece of paper labeled to "U.S. Postal Inspectors" along with the USPIS delivery address written on it.

5  The piece of paper was covering the original mailing label, which is how USPS employees often mail

6  parcels suspected of containing narcotics to Postal Inspectors. Law enforcement pulled back the piece

7  of paper and observed the mailing label bearing tracking number 9505 5162 1166 8290 3033 43. The

8  parcel was mailed on October 17, 2018 at the post office in Auburn, California. The parcel was mailed

9  to an address in Puerto Rico and was also consistent with parcels containing narcotics.

10       16.    A review of surveillance video for the Royal Oaks Post Office on October 31, 2018

11  showed that at approximately 1729 hours, DEBBIE removed the two parcels that she had hidden in the

12  supply room the previous day and placed them in a rolling hamper. DEBBIE also retrieved two

13  additional parcels from the Postal Inspector narcotic cart and put them in the same hamper. DEBBIE

14  pushed the hamper towards the retail section of the post office. Law enforcement reviewed postal

15  records and databases for the two parcels DEBBIE removed from the hiding location in the supply

16  room. Law enforcement determined that the Express Mail parcel bearing tracking number

17  EM079068293US and the Priority Mail parcel bearing tracking number 9505 5162 1166 8290 3033 43

18  never received another scan after their initial acceptance scan and they never arrived at their intended

19  destinations.

20       17.    On November 5, 2018 at approximately 2030 hours, law enforcement drove by the

21  MICHIGAN BLVD RESIDENCE and observed SUBJECT VEHICLE 1 parked in the driveway of the

22  residence. Parked next to SUBJECT VEHICLE 1 was a brown Dodge lifted pickup truck with no front

23  license plate, later determined to be SUBJECT VEHICLE 2. A later check of the registration for

24  SUBJECT VEHICLE 2 identified the registered owner as ASHNEEL KUMAR, with a registration

25  address at the MICHIGAN BLVD RESIDENCE. Law enforcement later reviewed USPS personnel

26  records and determined that KUMAR is DEBBIE's son.

27       18.    Based on a review of postal records, databases, and surveillance video for the Royal Oaks

28  Post Office, law enforcement determined that on November 17, 2018 at approximately 0945 hours, a

1   customer mailed a large brown USPS ReadyPost box bearing Priority Mail tracking number 9505 5133
2   7574 8321 2281 69. At the time of the mailing, a window clerk applied a postal sticker on the bottom of
3   the parcel in the middle. The customer paid in cash. The parcel weighed over 13 pounds, was destined
4   to an address in Massachusetts, and was consistent with other parcels containing narcotics. At
5   approximately 1333 hours, DEBBIE was in the back corner of the supply room behind some postal
6   equipment and opened, reviewed, and resealed a parcel. DEBBIE left the corner of the supply room and
7   was holding the large brown USPS ReadyPost box (with a postal sticker on the bottom of the parcel in
8   the middle) and walked out of view of the surveillance camera. At approximately 1556 hours, DEBBIE
9   was in the supply room carrying the large brown USPS ReadyPost box (with a postal sticker on the
10   bottom of the parcel in the middle). The postal sticker on the bottom of the parcel was cut. DEBBIE
11   placed the large brown USPS ReadyPost box (with a postal sticker on the bottom of the parcel in the
12   middle) in a "u-cart" and pushed the "u-cart" to the Postal Inspector narcotic cart. At approximately
13   1623 hours, DEBBIE went back to the "u-cart" and covered the large brown USPS ReadyPost box (with
14   a postal sticker on the bottom of the parcel in the middle) and another parcel with unused red and white
15   Priority Mail boxes. DEBBIE pushed the "u-cart" to the retail section. Law enforcement reviewed
16   postal records and databases and determined that the large brown USPS ReadyPost box (with a sticker
17   on the bottom in the middle of the parcel) bearing Priority Mail tracking number 9505 5133 7574 8321
18   2281 69 never received another scan after the initial Royal Oaks Post Office acceptance scan and it
19   never arrived at the intended destination.

20        19.    Based on a review of postal records, databases, and surveillance video for the Royal Oaks
21   Post office, law enforcement determined that on November 19, 2018 at approximately 1627 hours, a
22   customer went to the retail counter where DEBBIE was working and mailed a large brown box (with a
23   white label on the front in the center) bearing Priority Mail tracking number 9505 5133 7575 8323 2147
24   70. The customer paid in cash. The parcel weighed over 11 pounds, was destined to an address in
25   Connecticut, and was consistent with other parcels containing narcotics. At approximately 1645 hours,
26   DEBBIE arrived in the supply room carrying the large brown box (with a white label on the front in the
27   center). DEBBIE placed the large brown box (with a white label on the front in the center) inside an
28   orange cart near the Postal Inspector narcotic cart. At approximately 1805 hours, a customer went to the

1  retail counter where DEBBIE was working and mailed a medium brown box (wrapped in red priority

2  tape with a white label on the front in the center) bearing Priority Mail tracking number 9505 5133 7575

3  8323 2149 47.  The customer paid in cash.  The parcel weighed over 6 pounds, was destined to an

4  address in West Virginia, and was consistent with other parcels containing narcotics.  At approximately

5  1816 hours, DEBBIE arrived in the supply room carrying the medium brown box (wrapped in red

6  priority tape with a white label on the front in the center).  DEBBIE placed the medium brown box

7  (wrapped in red priority tape with a white label on the front in the center) in a "u-cart."  DEBBIE

8  removed the large brown box (with a white label on the front in the center) from the orange cart and

9  placed it in the same "u-cart."  DEBBIE pushed the "u-cart" with the parcels to the Postal Inspector

10  narcotic cart.  DEBBIE covered the parcels with a pack of red and white Priority Mail boxes that were

11  still wrapped in plastic.  DEBBIE pushed the "u-cart" to the center section of the post office.  Law

12  enforcement reviewed postal records and databases and determined that the large brown box (with a

13  white label on the front in the center) bearing Priority Mail tracking number 9505 5133 7575 8323 2147

14  70 and the medium brown box (wrapped in red priority tape with a white label on the front in the center)

15  bearing Priority Mail tracking number 9505 5133 7575 8323 2149 47, never received another scan after

16  their initial Royal Oaks Post Office acceptance scan and they never arrived at their intended

17  destinations.

18      20.      Based on a review of postal records, databases, and surveillance video for the Royal Oaks

19  Post office, law enforcement determined that on November 24, 2018 at approximately 1035 hours, a

20  customer mailed a large brown box (with two postal labels touching a white label on the front in the

21  center) bearing Priority Mail tracking number 9505 5133 7574 8328 2291 45.  The customer paid in

22  cash.  The parcel weighed over 7 pounds, was destined to an address in Minnesota, and was consistent

23  with other parcels containing narcotics.  At approximately 1108 hours, DEBBIE arrived in the supply

24  room carrying the large brown box (with two postal labels touching a white label on the front in the

25  center) and placed it on the Postal Inspector narcotic cart.  At approximately 1353 hours, a customer

26  mailed a large wide brown box bearing Priority Mail tracking number 9505 5133 7574 8328 2295 41.

27  The customer paid in cash.  The parcel weighed over 8 pounds, was destined to an address in

28  Massachusetts, and was consistent with other parcels containing narcotics.  At approximately 1406

1   hours, a customer mailed a large brown box (with four labels on the front) bearing Priority Mail tracking

2   number 9505 5133 7574 8328 2295 58. The customer paid in cash. The parcel weighed over 12

3   pounds, was destined to an address in Florida, and was consistent with other parcels containing

4   narcotics. At approximately 1531 hours, DEBBIE arrived in the supply room carrying the large wide

5   brown box and placed it on the Postal Inspector narcotic cart. At approximately 1603 hours, DEBBIE

6   arrived in the supply room with a "u-cart" containing parcels. DEBBIE removed other parcels and the

7   large brown box (with four labels on the front) and placed them on the Postal Inspector narcotic cart. At

8   approximately 1731 hours, DEBBIE arrived in the supply room and removed the large wide brown box

9   from the Postal Inspector narcotic cart and took it into a corner of the supply room out of view of the

10  camera, apparently to review the contents. DEBBIE returned and placed the large wide brown box in

11  the "u-cart." At approximately 1737 hours, DEBBIE arrived in the supply room and removed the large

12  brown box (with two postal labels touching a white label on the front in the center) and the large brown

13  box (with four labels on the front) and placed them in the "u-cart." At approximately 1758 hours, the

14  lights were off in the supply room and DEBBIE pushed the "u-cart" containing the large brown box

15  (with two postal labels touching a white label on the front in the center), large brown box (with four

16  labels on the front), the large wide brown box, and other parcels towards the front retail section of the

17  post office. Law enforcement reviewed postal records and databases and determined that the large

18  brown box (with two postal labels touching a white label on the front in the center) bearing Priority Mail

19  tracking number 9505 5133 7574 8328 2291 45, the large wide brown box bearing Priority Mail

20  tracking number 9505 5133 7574 8328 2295 41, and the large brown box (with four labels on the front)

21  bearing Priority Mail tracking number 9505 5133 7574 8328 2295 58, never received another scan after

22  their initial Royal Oaks Post Office acceptance scan and they never arrived at their intended

23  destinations.

24          21.     Based on a review of postal records, databases, and surveillance video for the Royal Oaks

25  Post Office, law enforcement determined that on December 1, 2018 at approximately 1237 hours, a

26  customer mailed a large brown box bearing Priority Mail tracking number 9505 5133 7574 8335 2329

27  09. The customer paid in cash. The parcel weighed over 26 pounds, was destined to an address in

28  Virginia, and was consistent with other parcels containing narcotics. At approximately 1343 hours,

1  DEBBIE placed the large brown box near the Postal Inspector narcotic cart.  At approximately 1434

2  hours, a customer mailed two large FedEx branded boxes with a large blue label on the side of the boxes

3  bearing Priority Mail tracking numbers 9505 5133 7574 8335 2330 12 and 9505 5133 7574 8335 2330

4  05.  The customer paid in cash.  The parcels weighed over 12 pounds, were destined to different

5  addresses in Pennsylvania, and were consistent with other parcels containing narcotics.  At

6  approximately 1552 hours, DEBBIE arrived in the supply room carrying one of the two large FedEx

7  boxes with a large blue label and placed it on the Postal Inspector narcotic cart.  At approximately 1718

8  hours, DEBBIE arrived in the supply room and put the large brown box into a white canvas cart.

9  DEBBIE removed additional parcels from the Postal Inspector narcotic cart, including the large FedEx

10  branded box with large blue label on the side, and placed them in the white canvas cart.  At

11  approximately 1751 hours, the lights were off in the supply room and DEBBIE pushed the white canvas

12  cart containing the large brown box, a large FedEx branded box with a large blue label, and other parcels

13  towards the front retail section of the post office.  Law enforcement reviewed postal records and

14  databases and determined that the large FedEx branded box with a large blue label bearing Priority Mail

15  tracking number 9505 5133 7574 8335 2330 12 was delivered to the intended destination.  The large

16  FedEx branded box with a large blue label bearing Priority Mail tracking number 9505 5133 7574 8335

17  2330 05 and the large brown box bearing Priority Mail tracking number 9505 5133 7574 8335 2329 09

18  never received another scan after their initial Royal Oaks Post Office acceptance scan and they never

19  arrived at the intended destinations.

20       22.    On December 8, 2018, law enforcement conducted surveillance at the Royal Oaks Post

21  Office.  During physical surveillance of numerous areas of the post office combined with reviews of

22  surveillance video from hidden cameras throughout various areas of the post office, law enforcement

23  observed DEBBIE conceal and eventually steal numerous parcels suspected of containing narcotics.  At

24  approximately 1056 hours, DEBBIE placed a large UPS Store branded box, which was mailed earlier in

25  the day by a customer at the Royal Oaks Post Office, onto the ground next to the Postal Inspector

26  narcotic cart in the supply room.  At approximately 1237 hours, a customer mailed a large orange and

27  brown Home Depot box at the counter.  The customer paid for the parcel in cash.  The parcel weighed

28  over twenty-five pounds, was destined to an address in Virginia, and was consistent with other parcels

1  containing narcotics. At approximately 1246 hours, DEBBIE brought the Home Depot parcel into the
2  supply room next to the Postal Inspector narcotic cart. DEBBIE placed the Home Depot parcel in a
3  large white canvas cart marked with "C1" on the side of the cart.  DEBBIE also picked up the UPS Store
4  box that she placed on the floor earlier and placed it in the same white canvas cart marked with "C1."
5  At approximately 1248 hours, DEBBIE removed two parcels (one white Priority Mail box and one
6  brown non-descript box) from the Postal Inspector narcotic cart. DEBBIE placed both parcels into the
7  same white canvas cart marked "C1."

8       23.    At approximately 1630 hours, the post office retail area closed for the day and postal
9  employees began conducting close out tasks before leaving for the night.  At approximately 1700 hours,
10  DEBBIE and one other postal employee were the only ones who remained in the retail area of the post
11  office. At approximately 1711 hours, DEBBIE arrived back at the Postal Inspector narcotic cart and
12  removed two additional Priority Mail boxes suspected of containing narcotics, and placed them into
13  white canvas cart, along with the other four parcels previously mentioned.  At approximately 1724
14  hours, DEBBIE arrived back at the canvas cart carrying an empty orange and blue sack, and placed it
15  over the top of the parcels she placed into the canvas cart throughout the day, in apparent attempt to
16  conceal the parcels within the cart. After the lights to the room had been turned off, DEBBIE placed
17  numerous flattened, empty Priority Mail boxes over the top of the blue and orange sack, in an apparent
18  attempt to further conceal the parcels within the white canvas "C1" cart.  DEBBIE then pushed the cart
19  out into the open lobby area of the post office. DEBBIE appeared to make a call on her cell phone while
20  keeping an eye on the white canvas cart.  Approximately one minute later, an individual wearing blue
21  jeans and a hooded sweatshirt mostly covering his/her face, holding a cell phone in his/her hand, entered
22  the post office lobby.  The individual retrieved the white canvas cart marked with "C1" and pushed it
23  out of the post office to SUBJECT VEHICLE 2, which was parked in the post office parking lot.  When
24  the individual took the cart, it was in the same condition as it was when DEBBIE last pushed it out into
25  the lobby, with flattened Priority Mail boxes laying over the top of the six parcels concealed within the
26  cart.

27      24.    Law enforcement observed the individual load all of the parcels from the white canvas
28  cart into the back seat of SUBJECT VEHICLE 2.  The individual discarded the canvas cart onto the

AFFIDAVIT          11

1  sidewalk (only the orange and blue sack remained inside the cart) and then got into the driver seat of

2  SUBJECT VEHICLE 2 and departed the area.  Law enforcement initiated mobile surveillance on

3  SUBJECT VEHICLE 2 but after only several minutes, terminated the surveillance due to the individual

4  driving at a high rate of speed, disregarding traffic laws, and cutting across multiple lanes of travel at a

5  time.

6        25.     At approximately 1800 hours, a law enforcement surveillance unit set up near the

7  MICHIGAN BLVD RESIDENCE observed SUBJECT VEHICLE 2 drive by the residence, but it did

8  not stop at the residence.  Over the next fifteen minutes, SUBJECT VEHICLE 2 drove past the

9  MICHIGAN BLVD RESIDENCE on four separate occasions, each time coming from a different

10  direction and none of the times actually stopping at the residence.  Due to the suspicious driving patterns

11  of SUBJECT VEHICLE 2, law enforcement terminated surveillance at the residence.

12        26.     On December 8, 2018, after the individual in SUBJECT VEHICLE 2 took the parcels

13  from the post office, law enforcement continued surveillance of DEBBIE at the post office.  At

14  approximately 1810 hours, DEBBIE departed the post office for the evening and exited the post office

15  lot driving SUBJECT VEHICLE 1.  Law enforcement established surveillance on DEBBIE for a short

16  time.  Law enforcement terminated the surveillance as DEBBIE headed in the general direction of the

17  MICHIGAN BLVD RESIDENCE.  At approximately 1930 hours, law enforcement conducted a drive

18  by of the MICHIGAN BLVD RESIDENCE and observed both SUBJECT VEHICLE 1 and SUBJECT

19  VEHICLE 2 parked in the driveway.

20        27.     Based on a review of postal records, databases, and surveillance video for the Royal Oaks

21  Post Office, law enforcement determined that on December 8, 2018 at 1030 hours, a customer mailed

22  the large UPS branded box bearing Priority Mail tracking number 9505 5133 7574 8342 2350 85.  The

23  customer paid in cash.  The parcel weighed over 22 pounds, was destined to an address in Florida, and

24  was consistent with other parcels containing narcotics.  At approximately 1236 hours, a customer mailed

25  the large orange and brown Home Depot branded box bearing Priority Mail tracking number 9505 5133

26  7574 8342 2352 07.  The customer paid in cash.  The parcel weighed over 28 pounds, was destined to an

27  address in Virginia, and was consistent with other parcels containing narcotics.  Law enforcement

28  reviewed postal records and databases and determined the large UPS branded box bearing Priority Mail

1  tracking number 9505 5133 7574 8342 2350 85 and the large orange and brown Home Depot branded

2  box bearing Priority Mail tracking number 9505 5133 7574 8342 2352 07 never received another scan

3  after their initial Royal Oaks Post Office acceptance scan and they never arrived at their intended

4  destinations.

5       28.    On December 9, 2018, law enforcement conducted a check of Thomson Reuters CLEAR

6  and confirmed that based on utility records, KUMAR was still associated with the MICHIGAN BLVD

7  RESIDENCE.  Based on the same CLEAR search, DEBBIE was still determined to be associated with

8  the MICHIGAN BLVD RESIDENCE.

9       29.    On December 11, 2018, law enforcement conducted a surreptitious "trash pull" at the

10  MICHIGAN BLVD RESIDENCE.  At the time of the trash pull, SUBJECT VEHICLE 1 and SUBJECT

11  VEHICLE 2 were parked in the driveway.  Law enforcement observed two rolling cans (one for trash

12  and one for recycling) on the street in front of the MICHIGAN BLVD RESIDENCE, and had them both

13  removed in order to conduct a review of the contents at a remote location.  Law enforcement conducted

14  a review of the trash inside the cans and observed numerous mail and items of indicia bearing both the

15  names of DEBBIE and KUMAR.  The mail found in the trash for both DEBBIE and KUMAR was

16  addressed to the MICHIGAN BLVD RESIDENCE and 2008 Maryland Court, West Sacramento, CA

17  95691 (hereinafter referred to as the "Maryland Court residence").  In addition, law enforcement

18  observed in the trash approximately seven flattened, unused red and white Priority Mail boxes.  The

19  boxes are the same type of boxes used by DEBBIE on multiple occasions to cover and conceal stolen

20  parcels at the Royal Oaks Post Office.

21       30.    On December 12, 2018, a Tracking Warrant (2:18-SW-1011 AC) was issued in the

22  Eastern District of California by the Honorable U.S. Magistrate Judge Allison Claire for SUBJECT

23  VEHICLE 1 and SUBJECT VEHICLE 2.  At 1708 hours, a GPS tracking device was installed on

24  SUBJECT VEHICLE 1.  On December 13, 2018 at approximately 0203 hours, a GPS tracking device

25  was installed on SUBJECT VEHICLE 2.

26       31.    Based on a review of postal records, databases, and surveillance video for the Royal Oaks

27  Post office, law enforcement determined that on December 29, 2018 at approximately 1016 hours, a

28  customer went to the retail counter where DEBBIE was working and mailed a large brown box (with

two stripes) bearing Priority Mail tracking number 9505 5133 7575 8363 2268 25.  The customer paid in cash.  The parcel weighed over twenty pounds, was destined to an address in Kentucky, and was consistent with other parcels containing narcotics.  At approximately 1025 hours, DEBBIE brought the large brown box (with two stripes) into the supply room and placed it on the Postal Inspector narcotic cart.  At approximately 1725 hours, DEBBIE removed the large brown box (with two stripes) and placed it in a "u-cart" that was near the Postal Inspector narcotic cart.  At approximately 1735 hours, DEBBIE arrived back at the "u-cart" with an orange sack, and placed it over the parcel in an apparent attempt to conceal the parcel within the cart.  DEBBIE pushed the "u-cart" into the middle of the post office and staged it behind a large pillar, in an apparent attempt to hide it from other employees.  DEBBIE returned and pushed the "u-cart" out of view of the surveillance camera.  Law enforcement reviewed the tracking data for SUBJECT VEHICLE 1 and it showed the vehicle leaving the Royal Oaks Post Office and driving to the MICHIGAN BLVD RESIDENCE.  Law enforcement later conducted a review of postal records and databases and determined that the large brown box (with two stripes) bearing Priority Mail tracking number 9505 5133 7575 8363 2268 25 never received another scan after the initial Royal Oaks Post Office acceptance scan and it never arrived at the intended destination.

32.     Based on a review of postal records, databases, and surveillance video for the Royal Oaks Post Office, law enforcement determined that on January 3, 2019 at approximately 1541 hours, a customer mailed a large brown box bearing Priority Mail tracking number 9505 5133 7573 9003 1522 30.  At the time of the mailing, a window clerk applied a postage label as well as red Priority Mail tape to the parcel.  The customer paid in cash.  The parcel weighed over sixteen pounds, was destined to an address in South Carolina, and was consistent with other parcels containing narcotics.  At approximately 1705 hours, DEBBIE brought the large brown box (with red Priority Mail tape) into the supply room and placed it on the Postal Inspector narcotic cart.  At approximately 1827 hours, DEBBIE pushed a "u-cart" containing parcels into the supply room and left it near the Postal Inspector narcotic cart.  At approximately 1906 hours, DEBBIE brought a white canvas cart into the supply room and transferred the large brown box (with red Priority Mail tape) from the Postal Inspector narcotic cart to the white canvas cart.  DEBBIE transferred three parcels from the "u-cart" to the white canvas cart.  DEBBIE pushed the white canvas cart to the middle of the post office, staged it behind a large pillar and covered

the parcels with an orange and blue sack, in an apparent attempt to hide it from other employees. At approximately 1916 hours, DEBBIE pushed the "u-cart" to the north side of the post office where she normally parks SUBJECT VEHICLE 1. Law enforcement reviewed the tracking data for SUBJECT VEHICLE 1 and it showed the vehicle leaving the Royal Oaks Post Office and driving to the Maryland Court residence and then driving to the MICHIGAN BLVD RESIDENCE. Law enforcement later conducted a review of postal records and databases and determined that the large brown box with (red Priority Mail) bearing Priority Mail tracking number 9505 5133 7573 9003 1522 30 never received another scan after the initial Royal Oaks Post Office acceptance scan and it never arrived at the intended destination.

33. Based on a review of postal records, databases, and surveillance video for the Royal Oaks Post Office, law enforcement determined that on January 5, 2019 at approximately 1451 hours, DEBBIE placed a brown box with blue eBay markings on the Postal Inspector narcotic cart. At approximately 1508 hours, DEBBIE placed two white Priority Mail parcels with excessive Priority Mail tape on the Postal Inspector narcotic cart. At approximately 1611 hours, a customer mailed a large brown box with green markings and lettering on it. The customer paid in cash. The parcel weighed over thirty-one pounds, was destined to an address in New York, and was consistent with other parcels containing narcotics. At approximately 1652 hours, DEBBIE brought the large brown box with green markings and lettering into the supply room and placed it on the Postal Inspector narcotic cart. At approximately 1732 hours, DEBBIE removed the large brown box with green markings and lettering from the Postal Inspector narcotic cart and transferred it to an orange cart. DEBBIE moved the orange cart to the back corner of the supply room, in an apparent attempt to hide it from other employees. DEBBIE cut the parcel open and reviewed the contents. DEBBIE taped the parcel back together and pushed the orange cart (containing the large brown box with green markings and lettering) towards the center of the post office out of view of the camera. Postal records indicate the large brown box with green markings was delivered to the intended destination. At approximately 1754 hours, DEBBIE removed the brown box with blue eBay markings from the Postal Inspector narcotic cart and took it to the same corner of the supply room, but this time she was out of view of the surveillance camera. DEBBIE appeared to take tape and a cutting instrument to the corner of the supply room where she staged the brown box with blue

1  eBay markings. DEBBIE took the brown box with blue eBay markings towards the employee

2  breakroom that is connected by a door to the supply room. When DEBBIE arrived in the breakroom she

3  was carrying a larger open brown box that was large enough to fit the brown box with blue eBay

4  marking inside it. DEBBIE went back into the supply room and took the two white Priority Mail parcels

5  with excessive Priority Mail tape off the Postal Inspector narcotic cart and went back to the breakroom.

6  When DEBBIE arrived in the breakroom she was carrying a brown bankers style box without a lid that

7  appeared to contain the two white Priority Mail parcels. DEBBIE left the breakroom carrying the larger

8  brown box (containing a brown box) and an open bankers style box (containing two white boxes).

9  DEBBIE walked out to SUBJECT VEHICLE 1. At approximately 1757 hours, DEBBIE loaded the

10 boxes into SUBJECT VEHICLE 1. According to the GPS tracking device, DEBBIE left the Royal Oaks

11 Post Office and arrived at the MICHIGAN BLVD RESIDENCE.

12     34.     On January 9, 2019, law enforcement reviewed the GPS tracking history from December

13 13, 2018 to January 9, 2019 for SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2. SUBJECT

14 VEHICLE 1 normally left the Royal Oaks Post Office in the evening and then stopped for the night at

15 the MICHIGAN BLVD RESIDENCE. On January 3, 2018, SUBJECT VEHICLE 1 left the Royal Oaks

16 Post Office in the evening and stopped at a separate residence before stopping at the MICHIGAN BLVD

17 RESIDENCE. SUBJECT VEHICLE 2 was, on most nights, parked at the MICHIGAN BLVD

18 RESIDENCE.

19     35.     On January 9, 2019, law enforcement reviewed postal databases to identify parcels

20 weighing over three pounds mailed from the Royal Oaks Post Office that matched known narcotics

21 profiling points. That review determined that between January 1, 2018 and January 6, 2019, over 100

22 parcels were accepted at the retail counter of the Royal Oaks Post Office that never made their intended

23 destinations and never received any additional scans after they were first accepted. Such parcels

24 typically receive an additional scan at further locations in the mail stream. Any parcel seized by the

25 Inspection Service typically will receive a scan that registers "seized by law enforcement."

26     36.     On January 11, 2019, a Tracking Warrant (2:19-SW-0023 CKD) was issued in the

27 Eastern District of California by the Honorable U.S. Magistrate Judge Carolyn Delaney for SUBJECT

28 VEHICLE 1 and SUBJECT VEHICLE 2.

37.     On January 19, 2019 at approximately 1044 hours, law enforcement drove by the MICHIGAN BLVD RESIDENCE and observed SUBJECT VEHICLE 2 backed into the driveway of the residence.  Law enforcement also observed a surveillance camera facing the driveway.

38.     On February 12, 2019, the Honorable U.S. Magistrate Judge Carolyn Delaney issued a Search Warrant (2:19-SW-0102 CKD) for the MICHIGAN BLVD RESIDENCE, SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2; and an Arrest Warrant (2:19-MJ-0029 CKD) for DEBBIE for a violation of 18 U.S.C. § 1709, Theft of US Mail by a Postal Service Employee.

39.     On February 14, 2019, law enforcement executed the search warrant for the MICHIGAN BLVD RESIDENCE, SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2.

40.     During the search of the MICHIGAN BLVD RESIDENCE and SUBJECT VEHICLE 1 law enforcement seized the Devices from the following locations:

| Digital Item Seized | Location |
| --- | --- |
| Samsung Galaxy S8 Cellular Phone, IMEI 359031082767817 | MICHIGAN BLVD RESIDENCE KUMAR's Bedroom |
| Samsung Galaxy S8 Cellular Phone, IMEI 358481090066341 | MICHIGAN BLVD RESIDENCE KUMAR's Bedroom |
| Samsung Galaxy S9 Cellular Phone, IMEI 354650091538250 | SUBJECT VEHICLE 1 |
| Swann 8 Channel HD Network Video Recorder, SN 1171004108022 | MICHIGAN BLVD RESIDENCE KUMAR's Bedroom |

41.     From the MICHIGAN BLVD RESIDENCE law enforcement also seized, amongst other items, $81,000 in US currency from a safe in KUMAR's bedroom, $153,652 in US currency from a safe in DEBBIE's bedroom, and four Priority Mail parcels, in the names of individuals not residing at the MICHIGAN BLVD RESIDENCE.

42.     On February 14, 2019, law enforcement executed the arrest warrant for DEBBIE. After Miranda advisement and waiver, DEBBIE confessed to stealing marijuana parcels and selling them for

1   $200 per parcel. Debbie advised that KUMAR assisted her with taking parcels away from the post office

2   on at least four occasions. DEBBIE said she would take the marijuana parcels to another subject's house

3   or the other subjects would pick up the marijuana parcels at the MICHIGAN BLVD RESIDENCE.

4   Debbie advised that she utilizes telephone calls and text messages to communicate with KUMAR and

5   telephone calls to communicate with the other subjects.

6       43.     Based on my experience, training, and discussions with other law enforcement officers

7   experienced in drug investigations, persons involved with marijuana trafficking often use their

8   residences to cultivate, store, maintain, package, and receive narcotics and narcotics proceeds.  I am

9   aware based on my training and experience that persons involved with marijuana trafficking and

10  trafficking of marijuana proceeds will use their vehicles to buy, sell, transport, mail and distribute

11  contraband related to drug trafficking, as well as further facilitate their ongoing drug trafficking

12  conspiracy. I am also aware that a surveillance camera system, installed at a residence, can record

13  images and audio of individuals and vehicles arriving and leaving a residence.

14      44.     Based on my experience, training, and discussions with other law enforcement officers

15  experienced in mail theft investigations, USPS employees and others involved in the theft of US Mail

16  from post offices, often utilize their residence to store, maintain and/or distribute their stolen goods. I am

17  aware based on my training and experience that persons involved with theft of US Mail from post

18  offices utilize their vehicle(s) to transport, sell, and distribute stolen items related to their ongoing

19  conspiracy. I am also aware that a surveillance camera system, installed at a residence, can record

20  images and audio of individuals and vehicles arriving and leaving a residence.

21      45.     Based on my experience, training, and discussions with other law enforcement officers, I

22  am aware that persons involved with mail theft and trafficking of marijuana will use cellphones and

23  computers to communicate and conduct sales and to receive proceeds including virtual currency and

24  digital money transfers.

25      46.     The Devices are currently in the lawful possession of the United States Postal Inspection

26  Service in Sacramento, California.  They came into the United States Postal Inspection Service in

27  Sacramento, California's possession in the following way: execution of Search Warrant 2:19-SW-0102

28  CKD.  Therefore, while the United States Postal Inspection Service in Sacramento, California might

AFFIDAVIT                                        18

1   already have all necessary authority to examine the Devices, I seek this additional warrant out of an

2   abundance of caution to be certain that an examination of the Devices will comply with the Fourth

3   Amendment and other applicable laws.

## IV.   **TECHNICAL TERMS**

47.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)  Surveillance system digital video recorder (DVR): A Surveillance System DVR is a surveillance camera system that typically consists of several cameras connected, either hardwired or wireless, to a DVR. The DVR typically stores recorded images and audio data received from the surveillance cameras to a mass storage device. Surveillance system DVRs can be connected to the internet to allow remote viewing from an external device. Data can be accessed by connecting the DVR to an external screen or remotely viewing the DVR data from an external device utilizing the internet or a local network.

c)  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and

removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

d)  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e)  GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f)  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer

programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

g)   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

h)   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

48.   Based on my training, experience, and research, I know that the Samsung Cellular Phone Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. I know that the Swann 8 Channel HD Digital Video Recorder is a surveillance system DVR. In my training and experience, examining data stored on the devices can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## V.   **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

49.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

50.     Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a)     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on

1    a storage medium.

2    51.    <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

3    warrant I am applying for would permit the examination of the device consistent with the warrant.  The

4    examination may require authorities to employ techniques, including but not limited to computer-

5    assisted scans of the entire medium, that might expose many parts of the device to human inspection in

6    order to determine whether it is evidence described by the warrant.

7    52.    <u>Manner of execution.</u>  Because this warrant seeks only permission to examine a device

8    already in law enforcement's possession, the execution of this warrant does not involve the physical

9    intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize

10   execution of the warrant at any time in the day or night.

11   **VI.    CONCLUSION**

12   53.    I submit that this affidavit supports probable cause for a search warrant authorizing the

13   examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Dustin Warner
Special Agent
USPS Office of Inspector General

Subscribed and sworn to before me on:  4/26/2019

The Honorable [Choose a Judge]        **Carolyn K. Delaney**
UNITED STATES MAGISTRATE JUDGE **U.S. Magistrate Judge**

Approved as to form by AUSA MIRA CHERNICK

AFFIDAVIT                    23

## **ATTACHMENT A**

The property to be searched is a Samsung Galaxy S8 Cellular Phone, IMEI 359031082767817, Samsung Galaxy S8 Cellular Phone, IMEI 358481090066341, Samsung Galaxy S9 Cellular Phone, IMEI 354650091538250, and Swann 8 Channel DVR, SN 1171004108022, hereinafter the "Devices." The Devices are currently located at USPIS Domicile, 2000 Royal Oaks Drive, Sacramento, California.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of
18 U.S.C. § 1708 (Theft or Receipt of Stolen Mail); 18 U.S.C. § 1709 (Theft of US Mail by a
Postal Service Employee); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute and
Distribution of a Controlled Substance); 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled
Substance); and involve Shabina Debbie or Ashneel Kumar since January 1, 2018, including:

     a.   any records or information related to individuals and vehicles arriving at and
leaving the MICHIGAN BLVD RESIDENCE

     b.   lists of customers and related identifying information;

     c.   types, amounts, and prices of drugs trafficked as well as dates, places, and
amounts of specific transactions;

     d.   any information related to sources of drugs (including names, addresses, phone
numbers, or any other identifying information);

     e.   any information recording Shabina Debbie's or Ashneel Kumar's schedule or
travel from January 1, 2018 to the present;

     f.   all bank records, checks, credit card bills, account information, and other financial
records.

     g.   any records or information related to the names, addresses or tracking numbers
for parcels

2.      Evidence of user attribution showing who used or owned the Devices at the time
the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,
saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of
Samsung Galaxy S8 Cellular Phone, IMEI
359031082767817, Samsung Galaxy S8 Cellular Phone,
IMEI 358481090066341, Samsung Galaxy S9 Cellular
Phone, IMEI 354650091538250, and Swann 8 Channel
DVR, SN 1171004108022, CURRENTLY LOCATED
AT USPIS Domicile, 2000 Royal Oaks Drive,
Sacramento, California

)
)
)
)
)
)
)

Case No.

**2:1 9 - SW - 3 6 6 CKD**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____May 10, 2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to
the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern
District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   4/26/2019 1:00pm          _Carolyn K. Delaney_
                                                                              *Judge's signature*

City and state:        Sacramento, California          Carolyn K. Delaney, U.S. Magistrate Judge
                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

Signature of Judge                                                    Date